UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-23809-CV-LENARD/TURNOFF

MARIA ELVIRA SALAZAR AND
RENZO MAIETTO,

   Plaintiff,
v.

WELLS FARGO BANK, N.A., a
National Association,

   Defendant,
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant's Motion for Rule 11 Sanctions **[DE 30]** and Defendant's Motion for Bill of Costs **[DE 56]**. A hearing on these Motions took place before the undersigned on June 16, 2010. As per the Court's prior Order **[DE 67]**, Plaintiffs appeared in Court.

Upon review of the Motions, the Responses, the Replies, the court file, hearing from counsel and Plaintiffs, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

This case was removed to this district on December 22, 2009. **[DE 1]**. The action was originally filed in the Eleventh Judicial Circuit in and for Miami-Dade County. The Complaint arises out of a December 7, 2006 consumer credit transaction entered into by Plaintiffs Maria Elvira Salazar and Renzo Maietto ("Plaintiffs") with Defendant for the purpose of refinancing Plaintiffs' home. **[DE1]**. The specific allegations are as follows: Count I - Breach of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), Count II - Breach of Florida Statute § 501.201, Florida Deceptive and Unfair Practices Act (FDUPTA), Count III - Request to Quiet Title Under Florida Statute § 65.061, Count IV - Breach of

Implied Covenant of Good Faith and Fair Dealing, Count V - Breach of Implied Warranty of Good Faith and Fair Dealing, and Count VI- Unjust Enrichment.

## Procedural History

Shortly after the case was removed (January 27, 2010), Defendant filed an Expedited *Ex Parte* Motion to Compel Appearance of (federally licensed) Counsel. **[DE 14]**. Then counsel of record, Julio Marrero, represented to Defendant that he was not a federally licensed[1] attorney. Upon receipt of the Motion, the undersigned scheduled a Status Conference and ordered Defendant to serve Mr. Marrero with Notice since Mr. Marrero could not receive CM/ECF Notice at the time.

A status conference took place on February 1, 2010. **[DE 18]**. At that time, the undersigned ordered Plaintiff to appear *via* a federally licensed attorney authorized to practice law in the Southern District of Florida by February 3, 2010. **[DE 19]**. Harvey D. Rogers, Esq. appeared on behalf of Plaintiffs on February 4, 2010. **[DE 20]**.

On February 16, 2010, Judge Lenard entered an Order to Show Cause as to non-compliance with her prior orders. **[DE 28]**. On February 23, 2010, Defendant filed a Motion for Sanctions pursuant to Rule 11. **[DE 30]**. That same day, Judge Lenard entered an Order Dismissing the Case due to, *inter alia*, failure to comply with the Court's prior orders, and failure to comply with the Court's Order to Show Cause. **[DE 31]**. The Order dismissed the case *without prejudice*, deemed all pending motions moot, and closed the case. That same day, Defendant filed a Motion for Reconsideration **[DE 32]**, asking the Court to reconsider its Order deeming all pending motions moot and to rule on Defendant's Motion for

---

[1] From the inception of this case until the June 16, 2010 hearing, Mr. Marrero was under the mistaken impression that he was not licensed to practice in this district. Since then, Mr. Marrero has discovered – through his staff – that he is actually admitted to practice in this district. .

2

Sanctions. Judge Lenard granted the Motion for Reconsideration to the extent that the Motion for Rule 11 Sanctions **[DE 30]** and Defendant's Motion to Dismiss **[DE 12]** were reinstated. **[DE 38]**. Defendant then filed a Motion for Sanctions by Default on March 31, 2010. **[DE 44]**.

On April 20, 2010, Judge Lenard once again entered an Order of Dismissal *without prejudice*. This time, the Order came as the result of Plaintiff's non-compliance with various Orders to Show Cause related to the scheduling of mediation. **[DE 55]**. In her Order, Judge Lenard specifically deemed all pending motions, except the motions for sanctions **[DE 30, 44]**, as moot. Id. A few days later, on April 22, 2010, Defendant filed a Motion for Costs **[DE 56]**. On April 26, 2010, Judge Lenard entered an Order Denying Plaintiffs' (second) Motion for Rehearing and Reconsideration—leaving as pending Defendant's Motions for Sanctions **[DE 30]**, Defendant's Motion for Sanctions by Default **[DE 44]** and Defendant's Motion for Bill of Costs **[DE 56, 64]**. The Motion for Sanctions by Default **[DE44]** was denied and a hearing on the merits of the Motion was noticed for May 20, 2010 **[DE 67]**.

At that hearing, the Court expressed concern over whether or not the Plaintiffs themselves were aware of the seriousness of the issues involved. In light of same, the Court rescheduled the hearing for June 16, 2010 and ordered Defendants to personally serve Plaintiffs with an Order requiring their attendance. Id.

### Analysis

In its Motion, Defendant is seeking sanctions against Plaintiffs (individually) and their counsel (Mr. Marrero and Mr. Rogers) for filing a frivolous Complaint and prosecuting frivolous claims. Defendant seeks sanctions <u>solely</u> on the substantive issues and not on counsels' non-compliance with Court orders. Defendant argues, *inter alia*, that Rule 11 sanctions are warranted here because this case has been dismissed countless times and is facially frivolous, and Plaintiffs should have withdrawn the

3

Complaint upon receiving notice that a Motion for Sanctions would be filed.[2] The primary basis for Defendant's request for sanctions against Plaintiffs individually is the fact that they reviewed the Complaint and made factual misrepresentations as to the non-receipt of certain documents.

Plaintiffs deny the allegations and insist that their Complaint was filed in good faith with an end towards preserving their rights under the above noted statutes which were "passed by Congress to both regulate the mortgage lending industry, and provide a framework for borrowers to seek relief upon a lender's breach." **[DE 48]**.

### Fed.R.Civ.P.11

Rule 11 states in pertinent part,

**(b) Representations to the Court.**

By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

**( c) Sanctions**.

> **(1) In general.**
> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

---

[2] Consistent with Rule 11 ( c) (1) (A), Defendant served Plaintiffs with the instant Motion and waited the requisite twenty-one (21) days – or safe harbor period– before filing same with the Court. **[DE 30]**. Plaintiff has not raised any issues regarding non-compliance with this procedural requirement.

> Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed.R.Civ.P 11. (original emphasis).

## Analysis

When ruling on a motion for Rule 11 sanctions, the Court performs a two part inquiry: "(1) whether the party's claims are objectively frivolous[3]; and (2) whether the person signing the pleadings should have been aware that they were frivolous." Benavides v. Miami Atlanta Airfreight, Inc., 612 F. Supp.2d 1236, 1238 (S.D. Fla. 2008) (quoting Byrne v. Mezhat, 261 F. 3d 1075, 1105 (11th Cir. 2001)). The first aspect of the inquiry takes into account the reasonableness of the action given the circumstances - and what was reasonable to believe - at the time the pleading was submitted. See Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1997); see also Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).

If the first prong is met, the second prong focuses on whether the lawyer should have been aware that the claims were frivolous. Id. at 695. The definition of a reasonable inquiry may depend on factors such as how much investigative time was available, whether the attorney had to rely upon client information, whether the pleading or paper was based on a *plausible* view of the law. Donaldson, 819 F.2d at 1556. Rule 11's Advisory Committee Note cautions us to "avoid using the wisdom of hindsight," and instead test the conduct by inquiring as to what was reasonable at the time the pleading or motion was filed. See id.; see also Fed.R.Civ.P. 11, Adv. Comm. Note, 1993 Am.

---

[3]Some examples of objectively frivolous claims are: (a) a pleading that has no reasonable factual basis; (b) a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (c) a pleading filed in bad faith or for an improper purpose. Jones v. Int'l Riding Helmets, 49 F. 3d 692, 694 (11th Cir. 1995).

In this connection, sanctions are not warranted simply because the evidence is weak. Id. (citing Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Fla., 827 F. 2d 1454, 1458 (11th Cir. 1987)); see also O'Neal v. DeKalb County, Georgia, 850 F. 2d 653, 658 (11th Cir. 1988) (the claims may be plausible although the actions may not ultimately warrant relief). Likewise, cases brought as a result of "poor judgment" are not automatically deserving of sanctions. Benavides, 612 F. Supp.2d at 1239.

Typically, the district court, "by virtue of [its] close contact with the parties is best able to determine the propriety of sanctions." See Norton Tire Co., Inc. v. Tire Kingdom Co., Inc., 858 F. 2d 1533, 1536 (11th Cir. 1998). That is, even if the court concludes that the assertion of a given claim violates Rule 11, the decision whether or not to impose sanctions is a matter for the court's discretion. See Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) (citing Simon DeBartolo Group, LP v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999) ("Once a court determines that Rule 11(b) has been violated, it *may* in its discretion impose sanctions.") (emphasis added)); see also Fed.R.Civ.P. 11.

Upon review of the Motion, the Responses, the Replies, and applying the relevant standard, the undersigned finds that the claims brought by Plaintiffs were not objectively frivolous so as to merit Rule 11 sanctions.

The matter at hand may not have been the strongest of cases. Further, there were clearly problems as to Plaintiffs' counsel's mismanagement of this action and failure to comply with court orders. There may well have been poor judgment on the part of Plaintiffs' counsel, particularly Mr. Marrero, who filed the underlying state court action, and represented Plaintiffs until Mr. Rogers entered an appearance on February 4, 2010. **[DE 20]**.

However, as outlined below, the undersigned finds that none of this rises to a level warranting

Rule 11 sanctions, and that even if such sanctions were warranted, the dismissal of Plaintiffs' action constitutes sufficient punishment. This is true as to Plaintiffs, who have had their federal lawsuit dismissed several times. It is likewise true for both counsel, who are left to explain to their clients the circumstances leading to the dismissal.

Having determined that sanctions are not warranted, the undersigned shall address Defendant's arguments in turn.

Here, Defendant argue that Counts I and II of the Complaint were frivolous at inception so as to warrant sanctions. Defendant specifically argues that (1) the rescission and damages claims under TILA were frivolous because (a) Plaintiffs cannot meet the threshold numerical requirements (as to under-disclosed amounts) to show rescission; (b) Plaintiffs were on notice of their right to cancel; and (c) Plaintiffs' claim is facially time-barred; and (2) because the bank is clearly exempt from a claim under FDUPTA. Each argument shall be addressed in turn.

Under TILA, banks are obligated to disclose finance charges; however, TILA tolerates a discrepancy of ½ of one percent. Here, Defendant argues that the alleged "under-disclosed" amount is well within TILA's tolerance for accuracy, as codified in 15 U.S.C. § 1605 (f).[4] Defendant specifically notes that the amount of credit extended was $ 1,995,000.00; one half of one percent of that amount is $ 9975 – the exact amount Plaintiffs claim was not disclosed. Because the amount is within the statute's safe harbor provision, Defendant suggests that the rescission claim is frivolous.

---

[4]15 U.S.C. § 1605 (f) states in pertinent part that the disclosure of the finance charges "shall be treated as being accurate" for purposes of § 1635 (regarding the right of rescission) if "the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half percent of the total amount of credit extended." See 15 U.S.C. § 1605 (f).

Defendant also argues that in either event, Plaintiffs never actually paid the $9,975 return to float fee, because it was credited back to them on the closing statement or HUD-1. Here, Plaintiffs do not dispute that the "return to float fee" was credited back to them. Instead, they argue that the issue is the fact that it was not properly disclosed as a charge pursuant to TILA. In other words, Plaintiffs argue that same should have been disclosed regardless of any credit given to the buyer. The undersigned agrees. The simultaneous credit of the return to float fee in the closing statement cannot be said to negate TILA's disclosure requirements.

Consistent with the above, and keeping in mind that this matter was never decided on the merits, the undersigned cannot find that this claim was objectively frivolous so as to warrant Rule 11 sanctions

Next, TILA requires that borrowers receive two (2) copies of the notice of the right to cancel. When borrowers have not received such notice, a rescission claim may be proper, and the statute of limitations for a TILA claim is extended from one (1) year to three (3) years. Here, if Plaintiffs received sufficient notice, then their claim for damages is time-barred under TILA.

In this connection, Defendant argues that Plaintiffs' signatures on the notice creates the presumption that they received it and eliminates all contrary arguments. Again, the Court is not persuaded. Although Plaintiffs signed the right to cancel, they maintain that same was not delivered at closing; creating at a minimum a rebuttable presumption. Further, even assuming receipt, they may not have *sufficiently* received it because, *inter alia*, a) they were unrepresented at closing and b) they may have been unaware of what they were signing due to the voluminous documents typically executed at closing.

Defendant further argues that the breach of FDUPTA claim was invalid at the outset because the statute expressly exempts banks from its scope. However, banks often act as agents, close transactions on behalf of other entities, or assign interests to other entities to unit trusts. At the time of

8

filing, it was not immediately apparent that Defendant was exempt because Plaintiffs were not yet aware of Defendant's status and role in the note.

It is important to note that at the time of the filing, Plaintiffs were in the midst of negotiating a modification of mortgage with Defendant – who they claim stalled negotiations for several months. Of equal importance, Plaintiffs contend that they were up against the clock as to the statute of limitations on the TILA count, and they had little time to put together a Complaint. Consistent with the above, the undersigned finds that Plaintiffs' FDUPTA claim may well have ultimately turned out to be incorrect. However, for present purposes, it appears to have been the result of circumstances that do not give rise to Rule 11 violations.

Defendant also notes that Plaintiffs' failure to sue the correct owner of the mortgage, the Trust, is sanctionable.[5] At the time of filing, however, Plaintiffs had not been notified that the loan was transferred. In fact, they continued to write monthly checks to Wells Fargo and Wells Fargo never told them otherwise. Plaintiffs specifically claim that they did not discover the identity of the true owner of the mortgage until served with a Complaint in a separate foreclosure action in May 2010. That action revealed the mortgage holder as "HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2007-PA6." The Court notes that an asset-backed entity may not have had the same exemption under FDUTPA. See <u>Office of Attorney Gen., Dept. of Legal Affairs v. Comm. Commercial Leasing, LLC</u>, 946 So. 1253 (Fla. 1 DCA 2007).

Consistent with the above, the undersigned finds that Plaintiffs were not entirely unreasonable in filing suit against the only entity they knew to own the note, Wells Fargo. Although Plaintiffs' claims

---

[5]During the course of these Motions, Defendant has argued that the property is actually owned by a trust that has since initiated foreclosure proceedings as to the property.

may have ultimately failed, given the totality of the circumstances, this Court does not find them to be frivolous and /or otherwise unreasonable so as to warrant sanctions.

Lastly, the Court would be remiss if it did not mention that these claims were never decided on the merits. Both of Judge Lenard's Orders dismissing the case were entered as paperless/endorsed orders in the Court's CM/ECF system, they state as follows:

> **ORDER DISMISSING CASE WITHOUT PREJUDICE. On January 6, 2010, the Court issued an Order 5 , directing the parties to file, inter alia, a completed form indicating whether the parties agree to have a U.S. Magistrate Judge decide certain issues. The parties were directed to file such form within 30 days. On February 16, 2010, the Court issued an Order to Show Cause (D.E. 28), directing the parties to file a consent form on or before February 22, 2010, and instructed the parites that "failure to comply shall result in dismissal of this action." As of the date of this Order, the parties have not filed a consent form or otherwise submitted good cause for failure to do so. Accordingly, pursuant to Fed. R. Civ. P. 41(b), this case is DISMISSED WITHOUT PREJUDICE for failure to comply with the Court's Orders and all pending motions are DENIED AS MOOT. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 2/23/2010. (mhz) (Entered: 02/23/2010)**

[DE 31].

> **ORDER DISMISSING CASE without prejudice. On April 13, 2010, the Court issued an Order to Show Cause (D.E. 53), directing Plaintiffs to file a new proposed order scheduling mediation, with a date agreed upon by all parties, on or before April 15, 2010, or "show cause why failure to comply with this Court's orders should not result in appropriate sanctions." As of the date of this Order, Plaintiffs have not complied with the Court's April 13, 2010, Order or shown cause for their failure to comply. Accordingly, it is ORDERED AND ADJUDGED that this action is DISMISSED WITHOUT PREJUDICE, all pending motions except Defendant's motions for sanctions (D.E. 30, 44) are DENIED AS MOOT, and this case is now CLOSED. This entry constitutes the ENDORSED ORDER in its entirety. Signed by Judge Joan A. Lenard on 4/20/2010. (MHz) (Entered: 04/20/2010).**

[DE 55].

Nothing in Judge Lenard's orders suggest that the claims were baseless, frivolous or were otherwise brought for improper purpose. Further, as noted *supra,* the dismissal of Plaintiffs' Complaint was based solely on non-compliance with the Court's Orders. There was no dismissal on the merits, and for purposes of Rule 11 sanctions, the Court does not require an assessment of the legal merits of a

claim. Instead, Rule 11 requires a court to objectively assess the actions of an attorney to determine whether an abuse of judicial process exists and, if so, what sanction is appropriate to deter improper or abusive conduct. See Fed.R.Civ.P. 11; see also O'Brien v. U.S. Dept. of Justice, 927 F. Supp. 382 (D.Az. 1995).

Based upon this limited record and Judge Lenard's paperless dismissal, it cannot be said that the claims were completely without merit so as to warrant the relief requested herein. This type of litigation, e.g., mortgagee vs. mortgagor, mortgage modifications, rescission, etc. is a relatively new and developing area of law. Unfortunately, due to, among other things, the economic downturn, unemployment, countless properties being "underwater," and a general misunderstanding of mortgage modification options and Government- backed assistance programs, the Courts are sure to see more of these actions. A finding to the contrary here would likely result in the use of Rule 11 as a vehicle to chill potentially valid causes of action based upon both currently established, and evolving areas of the law.[6]

Consistent with the above and foregoing, it is **RESPECTFULLY RECOMMENDED** that Defendant's Motion for Sanctions **[DE 30]** be **DENIED** as to both counsel and the Plaintiffs themselves.[7]

It is **FURTHER RESPECTFULLY RECOMMENDED** that Defendant's Motion for Costs **[DE 56]** be **GRANTED**. Generally, prevailing parties may recover costs as a matter of course. See FED.R.CIV.P. 54(d)(1). Here, Defendant prevailed in that Plaintiffs' action was dismissed by Order of

---

[6]The Court is not making any specific findings as to this particular case having the potential to advance any innovative theories of law.

[7]Indeed, Defendant concedes that Plaintiffs likely acted upon the advise of counsel. As represented in Court by Plaintiff Salazar, it was their understanding that the lawsuit needed to be filed in furtherance of preserving their rights and obtaining a mortgage modification.

the Court. Accordingly, the undersigned concludes that Defendant is entitled to recover its requested costs in the amount of $350 – which represents the filing fees associated with this case.

Pursuant to Local Magistrate Rule 4 (b), the parties have fourteen (14) days from service of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Court Judge. Failure to file timely objections shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F. 2d 745 (11th Cir. 1998); cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 2nd day of July 2010.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:   Hon. Joan A. Lenard
      Counsel of Record

      Sent *via* U.S.Mail to:
      Ms. Maria Elvira Salazar & Mr. Renzo Maietto
      6601 S.W. 71st Avenue, Miami, Florida 33143